**SO ORDERED.**

**DONE and SIGNED August 1, 2018.**



_____
**JEFFREY P. NORMAN
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| In Re: | * | Case #14-12416 |
| MB Industries, L.L.C. | * | Chapter 11 |
| Debtor | * | |
| _____ | | |
| David M. Dooley, Sr., *et al.* | * | AP #15-1005 |
| Plaintiffs | * | |
| | * | |
| Versus | * | |
| | * | |
| MB Industries, L.L.C., *et al.* | * | Judge Jeffrey P. Norman |
| Defendants | * | |

### MEMORANDUM OPINION

This matter is before the Court concerning the counterclaims (ECF No. 250) filed by M.B. Industries, L.L.C. Liquidating Trust, which is the successor in interest to M.B. Industries, L.L.C. (the "Debtor"). The counter-defendants are David Dooley, Sr., Brenda Dooley, David M. Dooley, Jr., and Chris Vallot ("the Dooley Parties"). All of the Debtor's counterclaims against Brenda

Dooley, David M. Dooley, Jr., and Chris Vallot have been dismissed by agreement. Further, all of the Debtor's counterclaims against David Dooley, Sr. ("Dooley") have been dismissed by agreement, except for Count 6 (ECF No. 387).[1] In Count 6, the Debtor is seeking the subordination of Dooley's unsecured proof of claim (Case No. 14-12416, Claim No. 42-1), which totals $4,204,211.00. For the following reasons, the Court finds that Dooley's claim should be contractually subordinated pursuant to the terms of the confirmed Chapter 11 plan.

## STATEMENT OF JURISDICTION

This proceeding pertains to a counterclaim by the estate against a person filing a claim against the estate. Therefore, pursuant to 28 U.S.C. § 157(b)(2)(C), this is a core proceeding.

## PROCEDURAL AND FACTUAL BACKGROUND

On July 13, 2018, this Court entered an agreed order (ECF No. 387) dismissing all of the Debtor's counterclaims, except Count 6 against David Dooley, Sr. The Debtor and Dooley agreed to submit stipulated facts, which they filed on July 13, 2018 (ECF No. 383). They also agreed to submit briefs, and then allow the Court to issue a ruling without the necessity of a trial. Both the Debtor and Dooley filed their briefs on July 18, 2018 (ECF Nos. 388 and 389).

The following is a recitation of the pertinent stipulated facts:

On October 2, 2014, an involuntary petition was filed against the Debtor pursuant to § 303 of the Bankruptcy Code which sought the entry of an order for relief under chapter 7 of the Bankruptcy Code. On November 6, 2014, this court entered an order for relief and converted this case to one filed under chapter 11 of the Bankruptcy Code. On May 26, 2016, this Court entered an Order (the "Confirmation Order") Confirming the First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Jointly Proposed by the Debtor, Hallwood

---

[1] All other claims and counterclaims in this case have been resolved by settlement (ECF No. 382). The Court is anticipating an agreed dismissal or consent judgment on those claims.

Financial Limited and Hallwood Modular Buildings, LLC, revised as of May 24, 2016, filed as Docket No. 577. The Confirmation Order established the MB Industries, LLC Liquidating Trust (the "Liquidating Trust") pursuant to the Liquidating Trust Agreement attached as an Exhibit to the Plan. By its terms, the Liquidating Trust Agreement transferred all of Debtor's causes of action to the Liquidating Trust, including all claims against the Dooley Parties. The plan also authorized the Liquidating Trust to object to any proof of claim.

Prior to the commencement of the Debtor's bankruptcy case, the Debtor entered into an agreement called "Carmel Companies Realignment Agreement" dated October 27, 2011 (the "Realignment Agreement"), a copy of which is attached as MBI Exhibit 1 to the counterclaim-complaint. [Exhibit 1].

By its terms, the Realignment Agreement compelled the Debtor to do the following [Answer by Dooley Parties, P-100, ¶ 12]:

    a. purchase all of the shares and interests owned by certain of the Dooley Parties (David Dooley, Sr., BD 2008 Family Trust No. 1 and DMD 2008 Family Trust No. 1) of certain companies known as The Carmel Group, Inc. and Carmel Enterprises, LLC (See, § 1(a));

    b. transfer all of those shares to the issuer of the stocks or interests of either The Carmel Group or Carmel Enterprises (See, § 1(c));

    c. purchase all Dooley's interest in the Debtor (i.e. to purchase treasury shares of Debtor);

    d. employ three (3) relatives of David Dooley, Sr. at a salary of $10,000 per month plus benefits for each relative (See, § 2(c)(i)), subject to a reduction in compensation by any amounts paid by MBI Leasing for distributions to David Dooley, Sr. (See, § 2(c)(ii)); and

    e. issue a promissory note payable to David Dooley, Sr. for $2,750,000, with a

maturity of the later of: (i) June 30, 2015 or (ii) the date that the creditors of the Debtor are paid in full (See, § 2(d)).

Within three (3) years before the commencement of the bankruptcy case, the Debtor transferred property (collectively, the "Transfers") to, or the benefit of, the Dooley Parties, including the following:

f. Transfers or obligations that were made or incurred on or within 2 years before the date of the filing of the petition (the "Second Year Transfers") in an amount not less than the sum of the amounts itemized in MBI Exhibit 2-1 (wages), MBI Exhibit 2-2 (insurance) and MBI Exhibit 2-3 (interest payment on promissory note) as attached to the counterclaim-complaint; and

g. Transfers or obligations that were made or incurred on or between 2 years and 3 years before the date of the filing of the petition (the "Third Year Transfers") in an amount not less than the sum of the amounts itemized in MBI Exhibit 3-1 (wages), MBI Exhibit 3-2 (insurance), and MBI Exhibit 3-3 (cell phone) as attached to the counterclaim-complaint.

The aggregate amount of all Transfers is not less than $834,817.82, representing the sum of the amounts itemized in: (i) MBI Exhibit 4 (summary of all wages, payroll taxes, benefits, insurance and cell phones); and (ii) MBI Exhibit 2-3 (interest payment on promissory note) as attached to the counterclaim-complaint.

With respect to the Transfers itemized in the exhibits attached to the counterclaim-complaint, Brenda Dooley, David M. Dooley, Jr., and Chris Vallot never showed up for work – and they were never expected by the Debtor to show up for work. [Transcript of court testimony by David M. Dooley, Sr., P-363, March 9, 2015, pp 19-20].

All of the Dooley Parties are related by blood or marriage. [Answer, P-100, ¶7]

At the time of (i) the execution of the Realignment Agreement, (ii) the issuance of the Promissory Note and (iii) remittance of each Transfer, Debtor was insolvent.

At the time of the execution of the Realignment Agreement and the issuance of the Promissory Note, David M. Dooley, Sr.: (i) was a member of the Debtor who owned a 19.95% interest in the Debtor, (ii) was a manager of the Debtor, (iii) owned a 50% interest in The Carmel Group, Inc. which owned a 56.05% interest in the Debtor, (iv) served as trustee of the BD 2008 Family Trust No. 1 which owned a 25% interest in Carmel Enterprises, LLC which owned a 19% interest in the Debtor. See, Exhibit A to Realignment Agreement. [Exhibit 1].

At the time of the execution of the Realignment Agreement and the issuance of the Promissory Note, Brenda Dooley served as trustee of the DMD 2008 Family Trust No. 1 which owned a 25% interest in Carmel Enterprises, LLC which owned a 19% interest in the Debtor. See, Exhibit A to Realignment Agreement. [Exhibit 1].

At the time of the execution of the Realignment Agreement and the issuance of the Promissory Note and during the time of each Transfer, the Debtor was a recipient of federal funds. [Transcript of court testimony by David M. Dooley, Sr., P-363, March 9, 2015, p.6].

At the time of the execution of the Realignment Agreement and the issuance of the Promissory Note, Debtor owed the "standstill creditors" the amounts set forth in MBI Exhibit 5 and did not have the ability to pay-in-full said "standstill creditors."

By virtue of the Realignment Agreement, Debtor purchased its own stock held by David Dooley, Sr. (i.e. treasury stock) at time when it was insolvent.

David Dooley, Sr. was an insider at the time the Realignment Agreement was executed and the Promissory Note issued because David Dooley, Sr. was a manager of the Debtor.

The Promissory Note was issued in connection with, and in consideration for, the purchase or sale of a security of the debtor or of an affiliate of the Debtor.

As part of the transaction which closed on October 27, 2011, each of the "standstill creditors" signed a Standstill Agreement, similar to the one attached as Dooley Exhibit 10, with MBI (the Debtor), and agreed to receive payment pursuant to a Promissory Note issued by MBI, which was secured by a mortgage on real property.

In addition to the foregoing stipulated facts, the Court has reviewed the attachments to Dooley's proof of claim. It is important to note that Count 6 of the Debtor's counterclaim does not dispute the amount or validity of this claim. The Debtor is merely asking the Court to subordinate the claim to other general unsecured creditors. The claim consists of the balance due on the Promissory Note, attorneys' fees due under the Promissory Note, and sums payable to Dooley's relatives.

The Court has also reviewed the confirmed plan in the underlying bankruptcy case (Case No. 14-12416, ECF No. 577). On page 20, the plan classifies David Dooley, Sr.' claim pursuant to Promissory Note as contractually subordinated, and proposes that the claim would be paid in Class 8B after claims in Classes 6, 7, and 8A had been paid in full. Although there was substantial pre-confirmation litigation in the bankruptcy case, the Court notes that no creditors or other parties filed an objection to the confirmation of the Debtor's Chapter 11 plan.

## LEGAL ANALYSIS

In its brief in support (ECF No. 389), the Debtor argues three theories why Dooley's claim should be subordinated to all other general unsecured creditors. First, it argues that the claim should be contractually subordinated pursuant to 11 U.S.C. § 510(a). It also argues that the claim would be subject to mandatory subordination pursuant to 11 U.S.C. § 510(b). Finally, it argues

that the claim should otherwise be equitably subordinated pursuant to 11 U.S.C. §§ 510(c) and 105. Dooley argues that none of these Code provisions apply, and that his claim (Claim No. 42-1) should not be subordinated to all of the other general unsecured creditors.

In its brief, MBI argues that Dooley's claim should be contractually subordinated pursuant to 11 U.S.C. § 510(a). That Bankruptcy Code subsection states the following: "A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law." MBI argues that the Realignment Agreement and the Promissory Note contained provisions subordinating Dooley's claim. Specifically, Section (a) of the Promissory Note (ECF No. 383, MBI Ex. 1) provides "the principal amount of this promissory note shall be payable the later of (i) June 15, 2015 or (ii) the date that the creditors of Maker are repaid in full all amounts owing to them at the Closing Date (as defined in the Realignment Agreement). Further, § 2(d) of the Realignment Agreement provides that the Promissory Note shall mature when "creditors of [the Debtor] are repaid in full all amounts owing to them at the Closing Date." The Debtor asserts that creditors, and specifically the standstill creditors, have not been paid in full. According to the Debtor, Dooley agreed to be paid on the Promissory Note after all other creditors had been paid in full; therefore, contractual subordination should apply to Dooley's claim pursuant to 11 U.S.C. § 510(a).

It is important to note that the Debtor did not request relief under 11 U.S.C. § 510(a) in Count 6 of its amended counterclaim (ECF No. 250). It only requested relief under 11 U.S.C. §§ 510(b), 510(c), and 105 (i.e., mandatory and equitable subordination). This likely explains why Dooley did not address this argument in his brief. Dooley has never been given an opportunity to properly respond in this adversary proceeding to the Debtor's argument that his claim should be contractually subordinated. If not for the binding effect of plan confirmation, which the Court will

more fully discuss below, Dooley's claim would not be subject to contractual subordination due to a lack of due process.

Page 20 of the Debtor's confirmed Chapter 11 plan (Case No. 14-12416, ECF No. 577) contains the following provision with respect to the treatment of Dooley's claim:

> With respect to Class 8B (David M. Dooley, Sr.'s Contractually Subordinated Claims), that certain promissory note dated October 27, 2011 from the Debtor made payable to the order of David M. Dooley, Sr. provides that the "principal amount of this promissory note shall be payable the later of (i) June 30, 2015 or (ii) the date the creditors of Maker are repaid in full all amounts owing to them at the Closing Date (as defined in the Realignment Agreement)." Thus, all claims arising from said promissory note are contractually subordinated to all creditors of Maker until they are repaid in full all amounts owing to them at the Closing Date (as defined in the Realignment Agreement). The holder of David M. Dolley, Sr.'s Contractually Subordinated Class 8B Claim, to the extent it is Allowed, will receive, in full and final satisfaction of such Claim, its Pro Rata Share of the Liquidating Trust Interests, to be paid after payment to Allowed Claims in Classes 6, 7 and 8A in a manner consistent with any subordination agreement of David M. Dooley, Sr. and/or §510(a) of the Bankruptcy Code.

There is no dispute that claim number 42-1 represents Dooley's claim relating to the Promissory Note, and it is clear that this plan provision proposes specific treatment of that claim.

Courts have held that, if a debtor's plan of reorganization provides for the subordination of a claim that is not the proper subject of subordination, the claim may nonetheless be subordinated if the claimant fails to object and the bankruptcy court confirms the plan. For example, in *In re Friedman's, Inc.*, 356 B.R. 766, 773 (Bankr. S.D. Ga. 2006), a bankruptcy court held that even if a claim would perhaps not be eligible for subordination pursuant to 11 U.S.C. § 510, the claim could still be subordinated "by virtue of a Plan provision approved in the Confirmation Order."

More recently, and more importantly, the United States Supreme Court has ruled on the binding effect of plan confirmation. In *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010), a debtor had proposed a Chapter 13 plan that contained a provision discharging interest on a student loan. Pursuant to 11 U.S.C. § 523(a)(8), student loans are non-dischargeable unless the

payment of such loan poses an undue hardship on the debtor. The student loan creditor failed to object to the plan with the student loan provision, and the plan was confirmed even though the bankruptcy court had not made a determination that the student loan posed an undue hardship. The Supreme Court found the creditor had been given proper notice of the plan. It then held that, even though the confirmation of the plan containing that student loan provision constituted legal error, the confirmation order remained enforceable and binding because the creditor had notice of the error and failed to object or appeal.

In this case, the confirmed Chapter 11 plan contains a provision that specifically dictates how Dooley's claim will be treated. In fact, that provision explicitly states that any claims resulting from the Promissory Note would be subordinated. This is despite the fact that the Promissory Note itself states that only the principal amount of the note would be subordinated, and not interest and attorney's fees. If Dooley had objected the Chapter 11 plan, it is quite possible this Court would have stricken that provision or required the Debtor to amend the plan to more accurately reflect the terms of the Promissory Note. However, Dooley did not object. Like in *Espinosa*, the confirmed plan is binding, and Dooley's claim must be treated pursuant to its provisions.

This result is further supported by an examination of the treatment of Class 9 claims on page 20 of the plan. Class 9 consists of "Equitably Subordinated Unsecured Claims subordinated pursuant to §510(c) of the Bankruptcy Code." It states that the Debtor would be requesting this Court equitably subordinate the Dooley Parties' unsecured claims. The provision goes on to state that the claims would be treated in Class 6 if the Court denied the equitable subordination of these claims. In this provision, it is clear that the treatment of these claims would be contingent on a future finding by the Court that the claims were equitably subordinated. No such contingency is proposed in Class 8. The plan states that Dooley's claims pursuant to the Promissory Note are

subordinated to all other general unsecured creditors, and that provision does not contemplate the Court making this determination in a proceeding at a later date.

Finally, the Court notes that Count 6 is not an objection to a proof of claim. In fact, the parties agreed to dismiss all of the other counterclaims filed by the Debtor. This includes Count 5, which actually was a request to disallow certain claims. The Court has reviewed Dooley's proof of claim, and it appears there may be amounts included that are not related to the Promissory Note, but that are instead related to the Realignment Agreement and amounts owing to other parties. However, the Court has not been asked to make a determination as to the validity of the claim, and no evidence has been presented or stipulated to that effect. The Debtor has simply requested the claim be subordinated. Therefore, without such evidence, the Court can only assume that the entire claim should be treated in Class 8 per the confirmed Chapter 11 plan.

## CONCLUSION

The Debtor has requested this Court subordinate Dooley's proof of claim (Claim No. 42-1) pursuant to 11 U.S.C. § 510(a), 510(b), 510(c), and 105. Although the Debtor did not request contractual subordination of Dooley's claim in its counterclaim, this Court will contractually subordinate the claim based on the terms of the confirmed Chapter 11 plan. Since the Court has found that the claim should be contractually subordinated, it does not need to address the parties' arguments with respect to mandatory and equitable subordination pursuant to §§ 510(b), 510(c), and 105.

**THEREFORE, IT IS ORDERED** that judgment is granted in favor of the counter-claimant M.B. Industries, L.L.C. Liquidating Trust, and against counter-defendant David Dooley, Sr., on Count 6 of the amended counterclaim (ECF No. 250). David Dooley, Sr.'s proof of claim

(Case No. 14-12416, Claim No. 42-1) shall be contractually subordinated pursuant to the terms of the confirmed Chapter 11 plan.

###